## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Justo L. González-Trápaga,<br><br>Plaintiff,<br><br>v.<br><br>Mayagüez Medical Center Dr. Ramón Emeterio Betances, Inc., et al.<br><br>Defendants. | Civil No. <u>15-1342</u> (DRD) |

## OPINION AND ORDER

On April 2, 2015, Plaintiff Justo L. González-Trápaga ("Plaintiff") filed the instant complaint seeking compensatory damages, permanent injunctive relief and a declaratory judgment from Defendants the Municipality of Mayagüez ("the Municipality"), the Mayagüez Medical Center Dr. Ramón Emeterio Betances, Inc. ("MMC"), the Vice President for Operations Jaime Maestre-Grau, the Executive Director Ildefonso Vargas-Feliciano, the Medical Director Dr. Milton D. Carrero Quiñones, and the President of the Medical Faculty Dr. Efraín Flores-De-Hostos (collectively, "Defendants"). Plaintiff sought the remedies available under the deprivation of civil rights statute, 42 U.S.C. § 1983, the Social Security Act, specifically 42 U.S.C. § 1395dd(d)(2)(A); and the Declaratory Judgement Act, specifically 28 U.S.C. § 2201. All remedies sought in the original complaint, with the exception of those sought under the

Declaratory Judgment Act, were dismissed pursuant to the *Opinion and Order* issued on

March 30, 2016. See Docket No. 105.

Pending before the Court is Defendants' *Motion to dismiss Plaintiff's outstanding*

*claims as moot* (Docket No. 121). Plaintiff opposed to this Motion (Docket No. 124); the

Municipality replied to Plaintiff's opposition (Docket No. 127) and the other co-

defendants filed a reply (Docket No. 130). For the reasons discussed herein, Defendants'

*Motion to Dismiss Plaintiff's outstanding claims as moot* (Docket No. 121) is hereby

**DENIED.**

## I.    FACTUAL AND PROCEDURAL OVERVIEW

Plaintiff is a physician who completed sub-specialties in Nephrology, Medical

Ethics and Interventional Nephrology in numerous hospitals throughout the United

States. See Docket No. 1, pp. 3-4, ¶8. He was granted hospital privileges at MMC

beginning on 1997. See Docket No. 1, p.6, ¶20. When filing the complaint, Plaintiff had a

private practice in Mayagüez, Puerto Rico and his principal referral hospital was MMC.

Id. ¶23.

Defendant MMC is a corporation organized under the laws of the

Commonwealth of Puerto Rico. See Docket No. 1, p.4, ¶9. The Municipality of

Mayagüez is the owner of MMC which was acquired from the Puerto Rico Department

of Health in 2000. Id. ¶14. The Municipality of Mayagüez signed a contract with MMC

for the administration of the hospital on January 29, 2010. Id.

All MMC staff abides by certain By-Laws, which include provisions pertaining to

how doctors should request a leave of absence from MMC and arrange appropriate care

for their patients during their absences. Despite these provisions, Plaintiff alleges that MMC failed to set up an "on-call" duty roster, as MMC was expected to do pursuant to federal law. See Docket No. 1, p.7, ¶27.

Plaintiff avers that MMC staff was indifferent to the needs of his patients even after he complied with the By-Laws provisions related to authorized absences. He included in the complaint allegations related to how other MMC nephrologists had refused to attend to his patients during his absences. See Docket No. 1, p.8, ¶31 and ¶33.

Plaintiff further argues that on July 18, 2012, he was informed by Dr. Sara Campos Monell, that the other eleven nephrologists "on-call" with hospital privileges refused medical treatment to one of plaintiff's renal patients because the patient had a pre-established "patient-physician relationship" with Plaintiff. This prompted Plaintiff to email Dr. Carrero Quiñones, regarding MMC's noncompliance with the establishment of an "on-call" roster. See Docket No.1, p.9, ¶38. Plaintiff requested that the matter be discussed at a faculty meeting, and it was, but no further action was taken. See Docket No. 1, p.10, ¶40.

Throughout the years, Plaintiff emailed and sent several letters requesting an "on-call" program and made allegations that on several occasions his patients had been transferred to other hospitals due to lack of available nephrologists. See Docket No. 1, pp.9-10 and pp.11-12, ¶¶38-39 and ¶¶48-51. These allegations were denied at all times by hospital upper management. See Docket No.1, pp.10-11 and pp.12-13, ¶¶44-45 and ¶¶55-57.

Between 2013 and 2014, the Medical Director issued two admonishment letters to Plaintiff for allegedly abandoning hospitalized patients while taking leaves of absence. See Docket No.1, p.13 and p.16, ¶60, ¶74 and ¶76. On both occasions, Plaintiff stated that these accusations were unfounded since he was only been assigned to those patients as a "consulting physician." Id. ¶77. He was warned that if he repeated the offending conduct, the By-Laws would be applied, which Plaintiff interpreted as his hospital privileges would be revoked.

On October 10, 2014, the Faculty President notified three proposed amendments to the By-Laws.[1] Plaintiff warned that other hospitals had instituted similar policies with the purpose of "marginalizing and illegally eliminating medical faculty." See Docket No.1, p.15, ¶69.

Plaintiff filed his Complaint against MMC and the above-mentioned co-defendants on April 1, 2015. On February 9, 2017, Plaintiff filed an *Opposition to Motion to dismiss plaintiff's claims as moot*. See Docket No. 124. In said Motion, Plaintiff referenced his *First Amended Complaint*, filed that same day, wherein he requested the jurisdiction of the Court pursuant to 28 U.S.C. § 1332 by invoking diversity jurisdiction as he was no longer living in Puerto Rico and instead was now residing in Leesburg, Georgia. See Docket No. 124, p.4, ¶10. Plaintiff also contended that the matter in controversy exceeded the jurisdictional sum of $75,000. Id. ¶11. However, the above-mentioned *Motion for Leave to File First Amended Complaint*, was denied by the Court. See

---

[1] These amendments included: the creation of: a "disturbing conduct" policy, 2) a policy when an MMC doctor refuses to provide medical care to a patient, and 3) a policy applicable to medical faculty members with disabilities. See Docket No.1, p.15, ¶67.

Docket No. 133.[2] The Court notes that the Plaintiff's move to the mainland may be consistent with the mass exodus of doctors and other professionals leaving the island of Puerto Rico in 2016 including the month of December 2016.

## II.    APPLICABLE LAW AND DISCUSSION

We will primarily center this discussion around three issues: a) whether Plaintiff needs to better define his alleged property interest in his hospital privileges; b) whether Plaintiff has sufficient standing to represent the interests of other doctors which he contends are also being affected by MMC's policies, and c) whether Plaintiff meets the threshold requirements for constructive discharge.

### A.  Protected Property Interest over his Hospital Privileges

Historically, the Courts do not hold a united front as to hospital privileges being considered a property right. Only some circuits, such as the Eleventh, Sixth and Fifth Circuits, do consider that a physician has constitutionally-protected property interest in their "hospital privileges." *See* Edwards v. Fresno Community Hosp., 38 Cal. App. 3d 702, 705 (5th Cir. 1986) (wherein the Fifth District Court of Appeals determined that "[a]lthough the term 'hospital privileges' connotes personal activity and personal rights may be incidentally involved in the exercise of these privileges, the essential nature of a qualified physician's right to use the facilities of a hospital is a property interest which

---

[2] The aforementioned Docket No. 133 was an Order issued by the Court denying "Motion for leave to file" filed by Plaintiff wherein he filed a First Amended Complaint claiming diversity of citizenship. See Docket No. 125. Docket No. 133 specifically stated that "For federal jurisdictional purposes, diversity of citizenship must be established as of the time of the filing of the suit. Since no diversity of citizenship existed when the instant case was filed and the rule of law clearly states that it cannot be created by a subsequent change of domicile of Plaintiff or other succeeding events, the Court hereby DENIES Plaintiff's motion. See Valentin v. Hospital Bella Vista, 254 F.3d 358, 361 (1st Cir. 2001); Rivera v. Hosp. Interamericano de Medicina Avanzada, 125 F.Supp.2d 11, 16 (D.P.R. 2000)."

directly relates to the pursuit of his livelihood.") *See also* <u>Shahawy v. Harrison</u>, 875 F.2d

1529, 1532 (11th Cir. 1989); <u>Yashon v. Hunt</u>, 825 F. 2d 1016, 1022-27 (6th Cir. 1987);

<u>Northeast Ga. Radiological Assoc. v. Tidwell</u>, 670 F. 2d 507, 511 (5th Cir. Unit B 1982).

Moreover, courts have repeatedly stated that physicians have a protected right as

long as it arises as such from the hospital's bylaws. Case law however has normally

focused on determining whether the medical staff privileges are protected interests, but

have shied away from determining whether the process established in the by-laws for

terminating those interests is an interest unto itself. *See* <u>Shahawy v. Harrison</u>, 875 F.2d

at 1532; <u>Tremblay v. Delaware County</u>, 2005 WL 11236960, *6 (E.D.Pa. 2005). The courts

have also examined hospital privileges in light of terminations of said privileges. *See*

<u>Daly v. Sprague</u>, 675 F.2d 716, 727 (7th Cir. 1982)(holding that when a physician has

hospital privileges as allowed by the hospital, but termination of said privileges fails to

constitute a deprivation of a protected property interest.)

In regards to Plaintiff's hospital privileges, normally, he would have lost any

interest related to the same as he voluntarily resigned said privileges in a letter sent to

the Medical Director at MMC on December 13, 2016. <u>See</u> Docket No. 121-1. However, as

evidenced by the discrepancy between the different circuits in determining whether a

hospital privilege can be considered a constitutionally-protected property interest, we

believe a more detailed assessment of the issue by the Parties is in order as the

allegations per se do not provide sufficient facts to determine a reasonable conclusion.

**B. Third-Party Standing under *Jus Tertti***

Plaintiff alleges that several of the policies implemented by MMC are intended to marginalize and eliminate medical faculty. See Docket No.1, p.15, ¶69. However, in order to present his claim on behalf of multiple physicians which he understands are being affected by said policies, Plaintiff must prove that he meets the elements required for third-party standing. This is considering that "[o]ne of the prudential limits on standing is that plaintiffs must assert their own legal rights and interests." *See* El Dia, Inc. v. Rossello, 30 F. Supp. 2d 160,169 (D.P.R. 1998) (citing Hodel v. Irving, 481 U.S. 704,711 (1987)).

In Singleton v. Wulff, 428 U.S. 106 (1976), the Supreme Court determined a bi-partite test to determine third-party standing. As stated in *Singleton*, a court must examine the relationship between plaintiff and the third person whose rights they are asserting and "determine if 1) the enjoyment of the right is inextricably bound up with the activity the litigant wishes to pursue; and 2) if the litigant is as effective a proponent of the right as the third party." El Dia, Inc., 30 F. Supp. 2d at 170. While utilizing this analysis, the courts tend to weigh the importance of the relationship between the litigants and the third party and whether the rights of the third party will be limited if the third-party standing is not allowed.

This standing should be recognized in most cases except in the following scenarios:"1) when the court reasonably believes that the litigant will not adequately represent the interest of the third parties concerned, or 2) when the factual context lacks the concreteness necessary to allow for the adjudication of the issues raised, pursuant to

the ripeness doctrine." <u>E.L.A. v. P.R. Tel. Co.</u>, 114 D.P.R. 394, Office Trans. 505 (1983)(citing H. Roar, <u>Fighting for the Rights of Others; The Troubled Law of Third-Party Standing and Mootness in the Federal Courts</u>, 33 U. Miami L. Rev. 393, 462-463 n. 293 (1981)). Most notably, other scholars such as Lawrence Tribe opine differently. Tribe, for example, contends that "standing to sue should be acknowledged in every case where the duty imposed on the litigant may probably affect the rights of a third party, or when the latter is not in a position to assert his rights." *See* <u>E.L.A.</u>, 114 D.P.R. at 511 (citing L.H. Tribe, American Constitutional Law 112, Mineola, N.Y., The Foundation Press, Inc. (1978).

In the case at bar, the Court is in no position to determine if the holding of this case will have any effect on the alleged third parties. The Court has no way of knowing if other doctors who currently have hospital privileges at MMC were subject to the same treatment as Plaintiff and allege similar claims as to the effects of the recent hospital policies. Likewise, while researching case law related to the case at bar, the Court found instances where doctors could invoke third party standing on behalf of their patients, namely in cases related to a patients' rights to receive contraception and abortions, but not on behalf of other doctors. <u>See</u> *Singleton*, 428 U.S. at 118; <u>Griswold v. Connecticut</u>, 381 U.S. 479 (1965); <u>Okpalobi v. Foster</u>, 190 F.3d 337, 350-53 (5th Cir. 1999).

### C. Constructive Discharge

Plaintiff tendered his resignation letter to the Medical Director, Dr. Carrero Quiñones, on December 13, 2016. <u>See</u> Docket No. 121-1. This occurred after having commenced the litigation against several of MMC's staff.

Plaintiff alleges that he had no choice but to resign from his job and hospital privileges at MMC and ultimately pursue a medical career in the State of Georgia because of "the Defendants' undeterred illegal actions against him." See Docket No. 124, p.4, ¶10.

Now, Plaintiff alludes to the fact that his resignation was not as "voluntary" as it would first seem, but rather he was constructively discharged. While he never expressly stated in his *Opposition to Motion Dismiss Plaintiff's Outstanding Claims* that he was constructively discharged, he claims a "forced" resignation is sufficient proof that he is implying as much. Id.

In an alleged case of "constructive discharge" it is critical to keep in mind that "[n]ot all unpleasant conduct is sufficient to show constructive discharge; rather a plaintiff must show that 'the working conditions imposed by the employer had become so onerous, abusive, or unpleasant that a reasonable person in the employee's position would have felt compelled to resign.'" Gutierrez-Lines v. Puerto Rico Elec. and Power Authority, 751 F.Supp.2d 327, 339 (D. P.R. 2010) (citing Velazquez-Fernandez v. NCE Foods, Inc., 476 F. 3d 6, 12 (1st Cir. 2007)). In essence, a plaintiff alleging constructive discharge must prove that "conditions were so intolerable that they rendered a seemingly voluntary resignation a termination." Torrech-Hernandez v. General Elec. Co., 519 F.3d 41, 50 (1st Cir. 2008). A plaintiff must show that "at the time of his resignation, his employer did not allow him the opportunity to make a free choice regarding his employment relationship." Id. (citing Exum v. U.S. Olympic Committee, 389 F. 3d 1130, 1135 (10th Cir. 2004)).

None of the facts alleged however indicate that Plaintiff had no choice but to retire from the position of nephrologist and to resign his hospital privileges at MMC. While he received some reprimands and admonishment letters indicating that he was abandoning his patients, they were not sufficient for Plaintiff to believe that his involuntary termination was looming. <u>See</u> Docket No. 1, pp.13 and 17, ¶60 and ¶79. *See also* Docket No. 1, p. 18, ¶86 wherein Plaintiff stated that he "objectively and subjectively expects that his next absence will be used as an excuse to expel him from the hospital and summarily cancel his hospital privileges."

As a result of his resignation, however, Plaintiff suffered no adverse action. *See* <u>Torrech-Hernandez</u>, 519 F.3d at 51-52 (holding that a biased fear of eventual termination of employment is inadequate to establish constructive discharge). Instead, an employee is obliged "not to assume the worst, and not to jump to conclusions too fast." <u>Garner v. Wal-Mart Stores, Inc.</u>, 807 F. 2d 1536, 1539 (11th Cir. 1987).

Even after a thorough examination of the motions, the matter is not quite as clear with respect to the remaining causes of action. Thus, after carefully reflecting on every potential course of action available, the Court has decided that, in the best interests of the Plaintiff, justice would best be served by requiring additional discovery and subsequent briefings on some matters of particular concern. Accordingly, the Court orders the parties to brief, after discovery, each of the following inquiries:

a. Does Plaintiff have a protected property interest over his hospital privileges?

b. Does Plaintiff suffice the requirements of third-party standing in order to represent the other doctors he alleges are also being threatened by the hospital policies?

c. Even assuming one or even two issues survive, does Plaintiff reach the threshold required under federal laws as to a constructive discharge in the instant case considering the totality of the circumstances regarding the resignation and the higher threshold required under the law for a cause of action.

### III.    CONCLUSION

For the aforementioned reasons, the Court hereby **DENIES without prejudice** Defendants' *Motion to Dismiss Plaintiffs Outstanding Claims as Moot* (Docket No. 121) only as to the matters stated in paragraphs a, b, and c of this same page, which can be subject to a potential dispositive motion request. Consequently, the Court **GRANTS** the parties 90 days to conduct discovery regarding the pending matters previously listed by the Court. Consistent with this Order, the discovery cut-off date will be on November 13, 2017. Dispositive Motions are due on or before December 13, 2017. No extensions shall be granted.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 10th day of August, 2017.

*/s/ DANIEL R. DOMÍNGUEZ*
DANIEL R. DOMÍNGUEZ
U.S. District Judge